Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Alison L. Gregoire
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JUL 0 2 2025

SEAN F. McAVOY, CLERK
SPOKANE, WASHINGTON

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TIMOTEO ROQUE ROQUE,<br><br>Defendant. | Nos.:   2:25-CR-00017-TOR-1<br>        2:25-CR-00018-TOR-1<br><br>Plea Agreement<br><br>Per Fed. R. Crim P. 11(c)(1)(C) |

Plaintiff United States of America, by and through Richard R. Barker, Acting United States Attorney the Eastern District of Washington, and Alison L. Gregoire, Assistant United States Attorney for the Eastern District of Washington, and Defendant TIMOTEO ROQUE ROQUE ("Defendant"), both individually and by and through Defendant's counsel, Justin Lonergan, agree to the following Plea Agreement.

## Introduction

Defendant has been charged by the State of Washington, in and for the County of Chelan, by way of Information, filed on October 8, 2024

Defendant wishes to resolve all of these pending federal and state charges as part of a single, global resolution. The United States Attorney's Office for the

PLEA AGREEMENT - 1

1  Eastern District of Washington and the Chelan County, Washington, Prosecuting
2  Attorney's Office agree to such a resolution, as set forth herein.
3      1.    <u>Guilty Plea and Maximum Statutory Penalties</u>
4          Defendant agrees to enter a plea of guilty to Count 2 of the Indictment filed
5  on February 19, 2025, in cause number 2:25-CR-17-TOR, which charges
6  Defendant with Attempted Online Enticement, in violation of 18 U.S.C. § 2422(b),
7  a Class A felony.
8          Defendant understands that Attempted Online Enticement as charged in
9  Count 2 carries the following penalties:
10          a.    a term of imprisonment of not less than 10 years and up to life;
11          b.    a term of supervised release of no less than 5 years and up to a
12                lifetime;
13          c.    a fine of up to $250,000;
14          d.    restitution;
15          e.    mandatory registration as a sex offender;
16          f.    a $100 special penalty assessment; and
17          g.    a special assessment of $5,000, as set forth in 18 U.S.C. § 3014,
18                the Justice for Victims of Trafficking Act ("JVTA"), absent a
19                judicial finding of indigence.
20      2.    <u>Supervised Release</u>
21          Defendant understands that if Defendant violates any condition of
22  Defendant's supervised release, the Court may revoke Defendant's term of
23  supervised release, and require Defendant to serve in prison all or part of the term
24  of supervised release authorized by statute for the offense that resulted in such term
25  of supervised release without credit for time previously served on post release
26  supervision, up to the following terms:
27          a.    5 years in prison if the offense that resulted in the term of
28                Supervised Release is a class A felony,

PLEA AGREEMENT - 2

1    b.    3 years in prison if the offense that resulted in the term of

2          Supervised Release is a class B felony, and/or

3    c.    2 years in prison if the offense that resulted in the term of

4          Supervised Release is a class C felony.

5    Accordingly, Defendant understands that if Defendant commits one or more

6    violations of supervised release, Defendant could serve a total term of

7    incarceration greater than the maximum sentence authorized by statute for

8    Defendant's offense or offenses of conviction.

9    3.    The Court is Not a Party to this Plea Agreement

10    The Court is not a party to this Plea Agreement and may accept or reject it.

11    Defendant acknowledges that no promises of any type have been made to

12    Defendant with respect to the sentence the Court will impose in this matter.

13    Defendant understands the following:

14    a.    sentencing is a matter solely within the discretion of the Court;

15    b.    the Court is under no obligation to accept any recommendations

16          made by the United States or Defendant;

17    c.    the Court will obtain an independent report and sentencing

18          recommendation from the United States Probation Office;

19    d.    the Court may exercise its discretion to impose any sentence it

20          deems appropriate, up to the statutory maximum penalties;

21    e.    the Court is required to consider the applicable range set forth

22          in the United States Sentencing Guidelines, but may depart

23          upward or downward under certain circumstances; and

24    f.    Defendant understands that this Plea Agreement contains

25          sentencing recommendations pursuant to Fed. R. Crim. P.

26          11(c)(1)(C). As a result, the United States may withdraw from

27          this Plea Agreement if the Court imposes a lesser sentence than

28          agreed upon, and Defendant may withdraw from this Plea

PLEA AGREEMENT - 3

1          Agreement if the Court imposes a harsher sentence than agreed

2          upon.

3     4.    Potential Immigration Consequences of Guilty Plea

4          If Defendant is not a citizen of the United States, Defendant understands the

5     following:

6          a.    pleading guilty in this case may have immigration

7                consequences;

8          b.    a broad range of federal crimes may result in Defendant's

9                removal from the United States, including the offense to which

10               Defendant is pleading guilty;

11         c.    removal from the United States and other immigration

12               consequences are the subject of separate proceedings; and

13         d.    no one, including Defendant's attorney or the Court, can predict

14               with absolute certainty the effect of a federal conviction on

15               Defendant's immigration status.

16         Defendant affirms that Defendant is knowingly, intelligently, and voluntarily

17    pleading guilty as set forth in this Plea Agreement, regardless of any immigration

18    consequences that Defendant's guilty plea may entail.

19    5.    Waiver of Constitutional Rights

20         Defendant understands that by entering this guilty plea, Defendant is

21    knowingly and voluntarily waiving certain constitutional rights, including the

22    following:

23         a.    the right to a jury trial;

24         b.    the right to see, hear and question the witnesses;

25         c.    the right to remain silent at trial;

26         d.    the right to testify at trial; and

27         e.    the right to compel witnesses to testify.

28

PLEA AGREEMENT - 4

1    While Defendant is waiving certain constitutional rights, Defendant
2    understands that Defendant retains the right to be assisted by an attorney through
3    the sentencing proceedings in this case and any direct appeal of Defendant's
4    conviction and sentence, and that an attorney will be appointed at no cost if
5    Defendant cannot afford to hire an attorney.

6    Defendant understands and agrees that any defense motions currently
7    pending before the Court are mooted by this Plea Agreement, and Defendant
8    expressly waives Defendant's right to bring any additional pretrial motions.

9    6.    Elements of the Offense

10    The United States and Defendant agree that to convict Defendant of
11    Attempted Online Enticement, in violation of 18 U.S.C. § 2422(b) (Count 2), the
12    United States would have to prove the following beyond a reasonable doubt:

13    *First*:  Defendant used and attempted to use a means or facility of interstate
14        commerce, that is the Internet and a cellular phone, to knowingly persuade,
15        induce, entice, or coerce an individual to engage in sexual activity for which
16        a person can be charged with a criminal offense, including sexual
17        intercourse;

18    *Second*:  if the sexual activity had occurred the defendant could have been
19        charged with a criminal offense under the laws of Washington State.  In
20        Washington it is a criminal offense to have sexual intercourse with another
21        who is at least twelve years old but less than fourteen years old when the
22        perpetrator is at least thirty-six months older than the victim;[1] and

23    *Third*:the individual the defendant attempted to persuade, induce, entice, or
24        coerce was a person he believed to be under the age of 18.

25

26    _____
27    [1] WASH. REV. CODE § 9A.44.076 reads, in relevant part, "A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and the perpetrator is at least thirty-six months older than the victim."
28

PLEA AGREEMENT - 5

For the government to prevail on an attempt charge, the government must also show:

> *Fourth*: the defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime.

7.    Factual Basis and Statement of Facts

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement.

On July 28, 2024, an undercover (UC) Internet Crimes Against Children (ICAC) Task Force Officer (TFO) was participating in an undercover enticement operation in Chelan County. Pursuant to the operation, the undercover would purport to be a minor online and communicate with targets with a goal of identifying those who were baiting children online for illegal sex. The UC ICAC TFO created an ad for an escort website saying "sweet Claire" was available to have sex for cash. The ad contained pictures of a young-looking female from the neck down.

After the ad was posted, the UC phone number received a text message from the phone number 509-486-8066. The first message stated, "Hello beautiful available$$?". The UC initially responded to this message with, "hey babe. Yep" at approximately 1017 hours. The next message from the suspect received at 1219 hours stated, "for 1hr $$$." The UC stated 400. Suspect replied, "For 30 min$$"

PLEA AGREEMENT - 6

1  The UC replied 250. At 1254 hours the suspect asked "Available 8 pm?" The UC
2  replied yeah. At 1302 hours the suspect asked, "Where are you located?".
3      The UC asked the suspect, "how old r u." Suspect replied "30." The UC said,
4  "nice. You ok with younger?" Suspect said, "and you" and "yeah." UC responded
5  with "im 13 but mature for my age u know," and "if that's ok lets set a time."
6  Suspect stated that was okay and asked for video calls. The UC explained that the
7  UC would not be doing video calls for free. The UC asked what the suspect wanted
8  to do. Suspect replied that he was interested but was worried the UC was an
9  undercover cop. The UC asked if the suspect was a cop, and said the UC was just
10  trying to make money. Suspect stated that he was trying to find fun and was afraid
11  the UC was setting him up. The UC said the UC was sorry and explained why the
12  UC didn't like to do video calls. The suspect said that he didn't want nude pictures
13  of "Claire" but just wanted some photos of her face to make sure "Claire" was real.
14  He asked for a photo of "Claire" with "today's date." A UC law enforcement
15  officer took a selfie with the current date. This photo was digitally regressed to
16  make the UC appear younger. The suspect responded with "ok" after receiving the
17  picture. He asked for the address to meet "Claire" again. The UC asked what he
18  wanted to do. He stated that he wanted another photo of the UC ("Claire") sticking
19  out her tongue.  The suspect then stated "for 1hr $$$?" UC stated that this was the
20  last photo UC would send and that UC had other people to text. The suspect said
21  "ok" and "yeah."
22      Another picture was sent to the suspect from the UC with her tongue
23  sticking out and flipping off the camera. The suspect responded, "with the date."
24  The UC told the suspect that the UC did not like to be told what to do. He said
25  "ok." The suspect asked if UC was available and what the address was. UC said
26  that it depended on the time. The suspect asked, "For 30 min?" UC replied with
27  "30min of fs?" and the suspect replied "yeah." UC stated "kk $250." He stated "ok"
28  and when UC asked him to bring condoms he stated "yeah."

PLEA AGREEMENT - 7

1    Fs stands for full service and is described in the UC ad as "intercourse-
2  vaginal (FS)." This is a common phrase used in communicating with suspects from
3  this escort website.

4    The two then setup a time for the suspect to meet with "Claire" for sex. The
5  suspect asked for the name of the hotel. The UC explained that UC had to get
6  ready for him, shower, and asked him to make sure to bring the condoms and cash.
7  The suspect again asked for the address. The UC gave him the address to the hotel
8  and asked what car to look out for.

9    The suspect texted at approximately 1406 and stated there was a police van
10  behind the hotel and stated, "I think it's a trap." The UC asked what he was talking
11  about. The suspect then asked for another photo.

12    At this time arrest and surveillance teams were in place at the arrest location
13  awaiting the suspect's arrival. They observed a blue Hyundai sedan, California
14  license plate 9CEX682 arrive in the parking lot of the hotel. At that time the
15  suspect asked for a photo of the UC, outside of the hotel. Two more photos of the
16  UC were sent to the suspect. While communicating with the suspect he stated that
17  he was in a white Honda, which was in the parking lot (along with the suspect's
18  Hyundai sedan). The arrest teams saw the white Honda and confirmed it was
19  unoccupied.

20    The suspect asked for the room number which UC declined to provide. He
21  said that he thought "Claire" was a police officer. Shortly after this the UC stopped
22  communicating with the suspect.

23    Eventually the blue Hyundai CA license plate 9CEX682 left the parking lot.
24  The suspect texted at approximately 1452 hours, "Bye," At approximately 1557
25  hours the suspect texted, "Hi." He asked for another photo and stated that he would
26  pay 300 for 30 minutes if the UC was real. The UC explained the UC didn't want
27  to play games and asked him for a photo. The suspect sent a selfie which matched
28  the Department of Licensing photo for Defendant, Timoteo ROQUE ROQUE.

PLEA AGREEMENT - 8

1       Another UC photo was sent to the suspect, now identified as Defendant
2   ROQUE ROQUE. The UC asked if he was at the hotel earlier in the blue Hyundai
3   and he stated, "yeah." They set a tentative time for 2100 hours to meet. They
4   talked about ways for them to both be safe for the meet. The UC confirmed that
5   Defendant was going to pay $250 for "FS" and would bring condoms.

6       The suspect arrived early at the hotel stating, "I'm already in the parking lot."
7   Arrest teams observed the blue Hyundai CA license plate 9CEX682 arrive in the
8   parking lot and park. They moved their vehicles towards the suspect's Hyundai. He
9   was taken into custody by the arrest team at approximately 2055 hours.

10      Defendant was read his *Miranda* rights, in Spanish, on scene and stated that
11  he understood. During the subsequent interview (conducted in Spanish),
12  Defendant stated he was coming to meet a couple for a threesome and he always
13  had condoms and cash ($646) on him. Eventually, he admitted to  messaging a 13-
14  year-old, but stated he only showed up to see if she was real—he did not believe
15  she was underage, so he was coming to the hotel to see if she was.  Defendant
16  admitted the two had agreed to sex but maintained he did not believe she was
17  actually 13, because girls advertising online pretend to be younger than they are.
18  Defendant admitted he did travel twice to the hotel.

19      Defendant consented to the search of his phone. The chat with the
20  undercover had been deleted, however, Defendant still had the many photos he had
21  requested of the UC on his phone.  When shown the age regressed photo of the UC
22  on his phone and asked for her age, Defendant said she said she was 13, but he
23  thought she was fake, noting, "girls fake their age; they are older."  Also on
24  Defendant's phone were child erotica images and child pornography videos
25  including:

26  • Video file VID_20231106_003828_056.mp4: two about 10 year olds in
27      front of adult male masturbating him

28

PLEA AGREEMENT - 9

- Video file VID_20231106_004356_610.MP4: 2 school age kids, approximately age 13, wearing uniforms; boy is having sex with the girl while other boys in the class watch
- Video file VID_20231106_004622_720.mp4: an approximately 11 year old girl displaying her bare vagina

Defendant agrees these videos meet the definition of child pornography.

Defendant further agrees that he, Timoteo ROQUE ROQUE, is a citizen and national of Mexico who was arrested and deported from the United States at San Luis, Arizona on July 15, 2019.

8.    The United States' Agreements

   a.    *Dismissal of 2:25-CR-18-TOR and Counts 1 and 3 in 2:25-CR-17-TOR:*

The United States Attorney's Office for the Eastern District of Washington agrees that at the time of sentencing, the United States will move to dismiss the Indictment in cause number 2:25-CR-18-TOR, filed on February 19, 2025, alleging Alien in the United States After Deportation, in violation of 8 U.S.C. § 1326. The government will also dismiss the Counts 1 and 3 of the Indictment filed on February 19, 2025, cause number 2:25-CR-17-TOR, which charges Defendant with Attempted Child Sex Trafficking, in violation of 18 U.S.C. § 1591(a)(1), (b)(1) and Possession of Child Pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B).

   b.    *Not to File Additional Charges:*

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

//

//

PLEA AGREEMENT - 10

9.    United States Sentencing Guidelines Calculations

Defendant understands and acknowledges that the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations.

a.    Base Offense Level

The United States and the Defendant agree that the base offense level for Attempted Online Enticement is 28. U.S.S.G. § 2G1.3(a)(3).

b.    Special Offense Characteristics

The United States and the Defendant agree that Defendant's base offense level is increased by 2 levels because the offense involved the use of a computer. U.S.S.G. § 2G1.3(b)(3).

c.    Acceptance of Responsibility

The United States will recommend that Defendant receive a downward adjustment for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a), (b), if Defendant does the following:

     i.     accepts this Plea Agreement;

     ii.     enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

     iii.     demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

     iv.     provides complete and accurate information during the sentencing process; and

     v.     does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is

PLEA AGREEMENT - 11

1  charged with, or convicted of, any criminal offense, or if Defendant tests positive
2  for any controlled substance.

3          d.      Agreements Regarding Representations to the Court

4          The United States has a duty of candor to the tribunal.  If the United States
5  and Defendant do not agree on the appropriate length of incarceration, the
6  appropriate length or applicable terms of supervised release, and/or the correct
7  guidelines calculations, variances, departures, and/or enhancements, the United
8  States reserves the right to respond to any and all arguments made by Defendant,
9  on any bases the United States deems appropriate, at all stages of this criminal
10  case.

11          Defendant may make any arguments it deems appropriate, at all stages of
12  this criminal case.

13          With regard to all briefing, submissions, and hearings in this criminal case,
14  the United States and Defendant agree to the following provisions:

15                  i.      The United States and Defendant may each respond to
16                          any questions from the Court or United States Probation
17                          Office;

18                  ii.     The United States and Defendant may each supplement
19                          the facts under consideration by the Court by providing
20                          information the United States or Defendant deems
21                          relevant;

22                  iii.    The United States and Defendant may each present and
23                          argue any additional facts that the United States or
24                          Defendant believe are relevant to the Sentencing
25                          Guidelines computation or sentencing;

26                  iv.     The United States and Defendant may each present and
27                          argue information that may already be known to the

28

PLEA AGREEMENT - 12

1  Court, including information contained in the
2  Presentence Investigation Report;
3  v. The United States and Defendant may each respond to
4  any arguments presented by the other;
5  vi. In order to support the United States' sentencing
6  recommendation as set forth herein, the United States
7  may oppose and argue against any defense argument or
8  any recommendation for any sentence lower than the
9  sentence recommended by the United States on any basis,
10  including arguments for a lower offense level, a lower
11  criminal history calculation, the application or non-
12  application of any sentencing enhancement or departure,
13  and/or any variance from the Guidelines range as
14  calculated by the Court;
15  vii. In order to support the defense sentencing
16  recommendation as set forth herein, Defendant may
17  oppose and argue against any argument by the United
18  States, or any recommendation for any sentence higher
19  than the sentence recommended by the defense on any
20  basis, including arguments for a higher offense level, a
21  higher criminal history calculation, the application or
22  non-application of any sentencing enhancement or
23  departure, and/or any variance from the Guidelines range
24  as calculated by the Court;
25  viii. The United States may make any sentencing arguments
26  the United States deems appropriate so long as they are
27  consistent with this Plea Agreement, including arguments
28  arising from Defendant's uncharged conduct, conduct set

PLEA AGREEMENT - 13

1    forth in charges that will be dismissed pursuant to this
2    Plea Agreement, and Defendant's relevant conduct; and
3    ix.    Defendant may make any sentencing arguments
4    consistent with this Plea Agreement Defendant deems
5    appropriate.

6    e.    No Other Agreements

7    The United States and Defendant have no other agreements regarding the
8    Guidelines or the application of any Guidelines enhancements, departures, or
9    variances.

10    f.    Criminal History

11    The United States and Defendant have no agreement and make no
12    representations about Defendant's criminal history category, which will be
13    determined by the Court after the United States Probation Office prepares and
14    discloses a Presentence Investigative Report.

15    10.    State Charges:

16    Defendant has requested to enter a guilty plea as set forth herein, to a federal
17    charge pending against him in the Eastern District of Washington and be sentenced
18    on the same. The Chelan County Prosecutors Office, has agreed not to file any
19    additional charges related to the investigation in this case and dismiss the
20    Information filed on October 8, 2024, in Superior Court of Washington for Chelan
21    County, Cause Number 24-1-00028-04, if this plea agreement is accepted.

22    11.    Incarceration[2]

23

24    [2] At the time of Defendant's original sentencing in the District Court, the United
25    States agrees to make a sentencing recommendation to the Court for 120 months
26    (10 years) of imprisonment, consistent with this Plea Agreement.  The United
27    States' agreement to make such a recommendation is limited exclusively to the
28    time of Defendant's original sentencing in the District Court.  The United States'

PLEA AGREEMENT - 14

1    Defendant acknowledges that this Plea Agreement is entered pursuant to

2  Federal Rule of Criminal Procedure 11(c)(1)(C) ("Rule 11(c)(1)(C)").  Pursuant to

3  Rule 11(c)(1)(C), the United States and Defendant agree that the appropriate

4  disposition of the case is 120 months (10 years) in custody, to be followed by a

5  lifetime of Supervised Release.  The United States and Defendant agree to make

6  those sentencing recommendations to the Court.  Although the United States and

7  Defendant agree to make these recommendations to the Court pursuant to Rule

8  11(c)(1)(C), Defendant acknowledges that no promises of any type have been

9  made to Defendant with respect to the sentence the Court will ultimately impose.

10    Defendant understands that Defendant may withdraw from this Plea

11  Agreement if the Court imposes a term of imprisonment of greater than 120

12  months (10 years) or indicates its intent to do so.  Defendant also understands that

13  the United States may withdraw from this Plea Agreement if the Court imposes a

14  term of imprisonment of less than 120 months (10 years) or a term of supervised

15  release of less than Defendant's lifetime, or indicates its intent to do so.

16

17  _____

18  agreement to make such a recommendation does not prohibit or limit in any way

19  the United States' ability to argue for or against any future sentencing modification

20  that takes place after Defendant's original sentencing in the District Court, whether

21  that modification consists of an amendment to the Guidelines, a change to a

22  statutory minimum or maximum sentence, any form of compassionate release, any

23  violation of Supervised Release, or any other modification that is known or

24  unknown to the parties at the time of Defendant's original criminal sentencing.  In

25  this Plea Agreement, the United States makes no promises or representations about

26  what positions the United States will take or recommendations the United States

27  will make in any proceeding that occurs after Defendant's original sentencing in

28  the District Court.

PLEA AGREEMENT - 15

The United States and Defendant acknowledge that the imposition of any fine, restitution, or conditions of Supervised Release are not part of the Rule 11(c)(1)(C) nature of this Plea Agreement; that the United States and Defendant are free to make any recommendations they deem appropriate as to the imposition of fines, restitution, or conditions of Supervised Release; and that the Court will exercise its discretion in this regard.  The United States and Defendant acknowledge that the Court's decisions regarding the imposition of fines, restitution, or conditions of Supervised Release will not provide bases for Defendant to withdraw Defendant's guilty plea or withdraw from this Rule 11(c)(1)(C) Plea Agreement.

Defendant acknowledges that if either the United States or Defendant successfully withdraws from this Plea Agreement, the Plea Agreement becomes a nullity, and the United States is no longer bound by any representations within it.

12.    Supervised Release

The United States and Defendant each agree to recommend a life term of supervised release. Defendant agrees that the Court's decision regarding the term or conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the term or conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

13.    Criminal Fine

The United States and Defendant may make any recommendation concerning the imposition of a criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

PLEA AGREEMENT - 16

14.   Judicial Forfeiture

Defendant agrees to voluntarily forfeit and relinquish all right, title and interest he has in the following listed assets to the United States:

-   a Silver Samsung cellular phone, WSP evidence number DG3570

Defendant stipulates that Defendant is the sole owner of the assets listed above and that no one else has an interest in this asset.

Defendant acknowledges that the asset listed above is subject to forfeiture to the United States pursuant to 18 U.S.C. § 2253, as property used or intended to be used in any manner or part to commit or to facilitate the commission of the offense to which Defendant is pleading guilty.

Defendant agrees to take all steps as requested by the United States to pass clear title to the assets to the United States and to testify truthfully in any forfeiture proceeding. Defendant agrees to hold all law enforcement agents and the United States, its agents, and its employees harmless from any claims whatsoever arising in connection with the seizure, abandonment, or forfeiture of any asset covered by this agreement.

Defendant further agrees to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. Defendant knowingly and voluntarily waives his right to a jury trial on the forfeiture of the asset(s). Defendant waives oral pronouncement of forfeiture at the time of sentencing, and any defects that may pertain to the forfeiture.

Defendant waives further notice of any federal, state or local proceedings involving the forfeiture of the seized assets the Defendant is agreeing to forfeit in this Plea Agreement.

//

//

PLEA AGREEMENT - 17

15.    <u>Mandatory Special Penalty Assessment</u>

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, pursuant to 18 U.S.C. § 3013.

16.    <u>Payments While Incarcerated</u>

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

17.    <u>Additional Violations of Law Can Void Plea Agreement</u>

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

18.    <u>JVTA and AVAA Special Assessments</u>

Defendant understands that Defendant will be required to pay a mandatory special assessment of $5,000 pursuant to the Justice for Victims of Trafficking Act ("JVTA") of 2015, absent a judicial finding of indigence.

19.    <u>Sex Offender Registration</u>

Defendant understands that by pleading guilty, Defendant will be required to register as a sex offender upon release from prison as a condition of supervised release, pursuant to 18 U.S.C. § 3583(d).

Defendant also understands that independent of Defendant's term of supervised release, Defendant will be subject to federal and state sex offender registration requirements, and that those requirements may apply throughout Defendant's lifetime.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will keep Defendant's registration current with the state

PLEA AGREEMENT - 18

sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours.

Defendant agrees that during the duration of Defendant's registration requirement, Defendant will notify and verify with the state sex offender registration agency or agencies of any state in which Defendant lives or resides for more than 72 hours, of changes to Defendant's name, place of residence, place of employment, education, or religious worship, and any other information required by such agency or agencies.

Defendant understands that Defendant will be subject to possible federal and state penalties for failure to comply with any such requirements. Defendant understands that under 18 U.S.C. § 4042(c), notice will be provided to certain law enforcement agencies upon Defendant's release from confinement.

As a condition of Supervised Release, Defendant shall initially register with the state sex offender registration of the state of Defendant's release, and shall also register with the state sex offender agency in any state where defendant resides, is employed, works, or is a student, as directed by the Probation Officer.

Defendant shall provide proof of registration to the Probation Officer within 72 hours of release.

20.    <u>Waiver of Appeal Rights</u>

In return for the concessions that the United States has made in this Plea Agreement, Defendant expressly waives all of Defendant's rights to appeal any aspect of Defendant's conviction and/or the sentence the Court imposes, on any grounds, so long as the Court imposes a term of incarceration consistent with this Rule 11(c)(1)(C) Plea Agreement. Defendant further expressly agrees that if the Court indicates its intent to impose a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, Defendant has fourteen (14) days from the sentencing hearing to file with the Court a notice of withdrawal from the Rule 11(c)(1)(C) Plea Agreement. Defendant expressly

PLEA AGREEMENT - 19

waives Defendant's right to withdraw from the Rule 11(c)(1)(C) Plea Agreement more than fourteen (14) days after the Court either imposes a sentence higher than the term or range consistent with the Rule 11(c)(1)(C) terms of this Plea Agreement, or indicates its intent to do so.

Defendant expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

21.    Withdrawal or Vacatur of Defendant's Plea

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.    this Plea Agreement shall become null and void;

    b.    the United States may prosecute Defendant on all available charges;

    c.    The United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.    the United States may file any new charges that would otherwise be barred by this Plea Agreement.

PLEA AGREEMENT - 20

1  The decision to pursue any or all of these options is solely in the discretion
2  of the United States Attorney's Office.

3  Defendant agrees to waive any objections, motions, and/or defenses
4  Defendant might have to the United States' decisions to seek, reinstate, or reinitiate
5  charges if a count of conviction is withdrawn, set aside, vacated, reversed, or
6  dismissed, including any claim that the United States has violated Double
7  Jeopardy.

8  Defendant agrees not to raise any objections based on the passage of time,
9  including but not limited to, alleged violations of any statutes of limitation or any
10  objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth
11  Amendment.

12  22.  Integration Clause

13  The United States and Defendant acknowledge that this document
14  constitutes the entire Plea Agreement between the United States and Defendant,
15  and no other promises, agreements, or conditions exist between the United States
16  and Defendant concerning the resolution of the case.

17  This Plea Agreement is binding only upon the United States Attorney's
18  Office for the Eastern District of Washington, and Chelan County as stated herein,
19  and cannot bind other federal, state or local authorities.

20  The United States and Defendant agree that this Agreement cannot be
21  modified except in a writing that is signed by the United States and Defendant.

22  Approvals and Signatures

23  Agreed and submitted on behalf of the United States Attorney's Office for
24  the Eastern District of Washington.

25  Richard R. Barker
   United States Attorney
26
27
   Alison L. Gregoire
28  Assistant United States Attorney

2 July 2025
Date

PLEA AGREEMENT - 21

I have read this Plea Agreement and I have carefully reviewed and discussed every part of this Plea Agreement with my attorney. I understand the terms of this Plea Agreement. I enter into this Plea Agreement knowingly, intelligently, and voluntarily. I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me in any way to enter into this Plea Agreement. I agree to plead guilty because I am guilty.

_____          2 July 2025
TIMOTEO ROQUE ROQUE                         Date
Defendant

I have read the Plea Agreement and have discussed the contents of the agreement with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in my client's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's guilty plea.

_____          2 July 2025
Justin Lonergan                             Date
Attorney for Defendant

Interpreted by: Maira Perez                 July 2, 2025

PLEA AGREEMENT - 22